NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0036n.06

Case No. 25-1540

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **FILED** |
| Plaintiff-Appellee, ) | Jan 21, 2026 |
| ) | KELLY L. STEPHENS, Clerk |
| v. ) | ON APPEAL FROM THE UNITED |
| ) | STATES DISTRICT COURT FOR |
| KHAOPHONE SYCHANTHA, ) | THE EASTERN DISTRICT OF |
| Defendant-Appellant. ) | MICHIGAN |
| ) | |
| ) | OPINION |

Before: SUTTON, Chief Judge; STRANCH and LARSEN, Circuit Judges.

SUTTON, Chief Judge. A jury found that Khaophone Sychantha smuggled illegal pills into the United States. He challenges his drug trafficking convictions on several grounds: that the district court lacked jurisdiction over the charges, that it violated his Sixth Amendment rights, and that it improperly sentenced him. We affirm.

I.

In 2002, law enforcement learned about Sychantha in the course of investigating a large-scale ecstasy smuggler in Detroit. The investigation revealed that Sychantha played a key role in a drug-trafficking ring, which moved ecstasy and other drugs from Canada into the United States. A grand jury indicted Sychantha for distributing controlled substances, and authorities obtained a warrant to arrest him. Sychantha avoided arrest. His name, though not his person, continued to

No. 25-1540, *United States v. Sychantha*

come up when agents arrested couriers smuggling drugs between the United States and Canada from 2005 to 2011.

In 2013, American authorities filed a superseding indictment against Sychantha for three counts of distributing controlled substances and one count of conspiring to do so. Canadian authorities charged him as well and set his case for trial in 2014. Still, Canadian and United States authorities continued to come up short in locating Sychantha. He was added to the "Homeland Security Investigations Top 10 Most Wanted List," and authorities solicited the help of Mexican officials based on rumors of his appearance in that country. R.199 ¶¶ 38–39.

In 2017, Canadian authorities located and arrested Sychantha. He pleaded guilty to Canadian charges and received a sentence of nearly two and a half years. At the same time, United States officials requested extradition. After an unsuccessful challenge to his extradition, Canada approved Sychantha's removal. Sychantha first appeared in an American court in 2023.

Sychantha could not afford an attorney, and the court appointed counsel for him. His relationship with his court-appointed counsel deteriorated six months into his representation. Sychantha would "berate" and accuse his counsel of being "'in league' with the government" because he would not focus on Sychantha's (already completed) extradition process. R.78 at 3. Sychantha refused to discuss anything else. The court informed Sychantha that it "would appoint one more attorney" and that "would be the last attorney" it would appoint for him. R.115 at 14. His second appointed counsel moved for a mental health evaluation because Sychantha "maintain[ed] consistently that he never had an extradition hearing [in] Canada" and was instead "kidnapped by the United States Marshals," even after the attorney showed him documentation of his Canadian extradition hearing and appeal. R.115 at 10–11. When his second appointed attorney

No. 25-1540, *United States v. Sychantha*

declined to pursue this line of inquiry, Sychantha accused him of "working for the Government." R.115 at 10. The district court found Sychantha competent to stand trial.

Three weeks before the trial set for October 10, 2023, the district court held a pre-trial hearing. Sychantha told the court that he "wanted to get a new lawyer." R.165 at 13. The district court reminded Sychantha that it would not appoint a third lawyer, and that, if Sychantha hired new counsel himself, the lawyer would need to be ready by the trial date. If Sychantha chose to represent himself, the court added, his second appointed attorney would act as standby counsel.

Sychantha agreed that he wanted to represent himself. The district court conducted a *Faretta* inquiry and concluded that Sychantha had waived his right to counsel knowingly and intelligently. *See Faretta v. California*, 422 U.S. 806 (1975). The case proceeded to trial.

On the first day of trial, Sychantha moved to appoint new counsel and claimed that he never waived his right to counsel. The court denied the motion, ruled that he had waived his right to counsel, and noted that Sychantha's second appointed attorney continued to "be[] at [his] disposal" "should [Sychantha] wish to rely on his advice." R.148 at 1–2. On October 18, the jury convicted Sychantha on all counts. The district court sentenced him to 240 months.

II.

On appeal, Sychantha challenges his conviction and sentence in three ways: (1) that the court lacked personal jurisdiction over him due to alleged failings in the extradition process, (2) that the court violated his Sixth Amendment rights, and (3) that the court erred in sentencing him.

*Extradition and personal jurisdiction.* In skeletal fashion, Sychantha makes what appears to be three challenges to the federal court's personal jurisdiction over him: that Canada denied

No. 25-1540, *United States v. Sychantha*

him a fair extradition process, that his extradition violated the terms of the extradition treaty, and that the United States used torture in extraditing him. Each argument falls short.

As to the first argument, the record reflects that Canada proceeded through the standard extradition process. It simply did not go Sychantha's way. The same is true for his appeal from the Canadian decision. Having apparently failed to obtain relief in the Canadian appellate courts, he may not obtain appellate relief here. Sychantha offers no record-supported ground for challenging this conclusion.

As to his second argument, he maintains that his removal from Canada violated the extradition treaty with the United States. The treaty, he points out, requires that a provisionally detained individual "shall be set at liberty" 60 days from his arrest "if a request for extradition and the [required] documents" "have not been received" by Canada within the requisite 60 days. Protocol Amending the Treaty on Extradition Between the United States of America and Canada, Can.-U.S., art. VI, Jan. 11, 1988, T.I.A.S. No. 91-1126. But the treaty does not create a private right of action cognizable in federal court on this count, and Sychantha does not argue otherwise. *See Loza v. Mitchell*, 766 F.3d 466, 499 (6th Cir. 2014). Even if we assume for the sake of argument that the treaty "protects an individual right against the U.S. government," *United States v. Trabelsi*, 28 F.4th 1291, 1306 (D.C. Cir. 2022) (Rao, J., concurring), the treaty says that the decision to extradite "shall be made in accordance with the law of the requested State and the person whose extradition is sought shall have the right to use all remedies and recourses provided by such law," Treaty on Extradition Between the United States of America and Canada, Can.-U.S., Dec. 3, 1971, T.I.A.S. No. 8237. Canada, the requested State, controlled Sychantha's extradition process. As shown and as Sychantha fails to rebut, he had every trial and appellate opportunity to challenge that Canadian process.

No. 25-1540, *United States v. Sychantha*

But even if that were not the case, even in other words if Canada had violated the treaty and even if it created a private right of action for extradited individuals, these allegations would not create an impediment to obtaining personal jurisdiction over him. "Federal courts have personal jurisdiction over criminal defendants before them, whether or not they are forcibly brought into court." *United States v. Pryor*, 842 F.3d 441, 448 (6th Cir. 2016); *see Frisbie v. Collins*, 342 U.S. 519, 522 (1952). Obtaining the presence of an individual from another country without using the process required by an extradition treaty does not by itself divest a court of jurisdiction over the individual. *See United States v. Alvarez-Machain*, 504 U.S. 655, 668–70 (1992). The Supreme Court has declined to "imply from the terms of [a] Treaty that it prohibits obtaining the presence of an individual by means outside of the procedures the Treaty establishes." *Id*. at 669. "For the past [135] years, the Supreme Court has consistently held that the manner in which a defendant is brought to trial does not affect the ability of the government to try him." *Matta-Ballesteros v. Henman*, 896 F.2d 255, 260 (7th Cir. 1990). Sychantha offers no response to these authorities or these arguments in his opening or reply briefs.

As to his third argument, Sychantha claims that we lack jurisdiction because the United States used torture to extradite him. *See United States v. Toscanino*, 500 F.2d 267, 275–76 (2d Cir. 1974). In *United States v. Palaez*, we reserved the question of whether *Toscanino* created a valid exception to *Ker* and *Frisbie*'s rule that "[a] forcible abduction in itself does not offend due process or require dismissal of an indictment." 930 F.2d 520, 525 (6th Cir. 1991); *see Ker v. Illinois*, 119 U.S. 436, 444 (1886); *Frisbie*, 342 U.S. at 522. We needn't decide that question here either because Sychantha is wrong that the United States used torture to extradite him. Sychantha has not pointed to any evidence that American officials used torture in bringing him here. His only argument is that the government's actions of delaying provision of the extradition documents,

No. 25-1540, *United States v. Sychantha*

holding him beyond 60 days without a proper extradition hearing, physically handcuffing him, and involuntarily removing him from Canada constitute torture. Appellant's Br. 32. These facts do not rise to the level of torture. The district court, in short, had personal jurisdiction over Sychantha.

*Sixth Amendment.* Sychantha claims that the district court violated his Sixth Amendment rights in three ways: that it erred in concluding he waived his right to counsel, that the court should have appointed him a third counsel, and that it denied him a speedy trial. Each claim fails.

*Sixth Amendment—waiver of right to counsel.* Start with the claim that the court erred in finding that he knowingly and intelligently waived his right to counsel. The Sixth Amendment explicitly guarantees a right to counsel and implicitly guarantees a "corollary right to waive counsel." *United States v. Powell*, 847 F.3d 760, 774 (6th Cir. 2017). But it does not grant defendants appointed counsel at government expense a "right to choose their counsel." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). A defendant's "persistent, unreasonable demand for dismissal of counsel is the functional equivalent of a valid waiver of counsel." *United States v. Green*, 388 F.3d 918, 921 (6th Cir. 2004) (quotation omitted). We give fresh review to the court's ruling. *United States v. Johnson*, 24 F.4th 590, 601 (6th Cir. 2022).

Sychantha waived his right to counsel. By the time of the *Faretta* hearing, Sychantha had fired one lawyer for refusing to pursue a frivolous argument, berated the second one for similar reasons, and without evidence accused both lawyers of colluding with the government. In asking to fire his second court-appointed attorney, Sychantha said only that the attorney refused to file a motion he requested and that the attorney "d[id not] have [his] best interest" at heart. R.165 at 21. The court made Sychantha's options clear: he "could (1) maintain his current appointed counsel, (2) hire an attorney at his own expense, or (3) represent himself." *United States v. Pittman*, 816 F.3d 419, 425 (6th Cir. 2016). While Sychantha initially said he was "going to hire [his] own

6

lawyer," he acknowledged he did not have one lined up. R.165 at 14. When the court said "If you want to represent yourself—," Sychantha quickly said "Yes." R.165 at 15. With less than three weeks before trial, with no new attorney hired, with Sychantha's options clearly presented to him, and with the court's warning that an October 10 trial date would be honored fresh on the table, all signs pointed to self-representation. *See Pittman*, 816 F.3d at 425.

The court confirmed as much by conducting a hearing to ensure that Sychantha waived his right to counsel knowingly and intelligently. *See Faretta*, 422 U.S. 806. The district court asked Sychantha about his "contact with the criminal justice system"; Sychantha's lawyer described Sychantha's previous jury trial in Canada, and Sychantha agreed with the description. R.165 at 15–16. The court asked Sychantha whether he had ever represented himself in a criminal action or studied law; Sychantha said that he had not. The court walked through Sychantha's indictment, including the charges and sentencing consequences; Sychantha said that he understood. The district court informed Sychantha that it would not be able to help him during the trial; Sychantha said he understood. The district court inquired into Sychantha's understanding of relevant law; Sychantha said he had reviewed the Federal Rules of Evidence at the prison law library and understood that those rules and the Rules of Criminal Procedure would not be relaxed for his benefit. The court advised Sychantha that "a trained lawyer would defend [him] far better than [he] could defend [him]self," and that the court thought it "unwise" for Sychantha to represent himself; Sychantha said that he understood. R.165 at 21. The court then told Sychantha directly that his counsel should try the case for him, to which Sychantha responded, "No, I know he don't have my best interest." R.165 at 21.

The district court found that Sychantha knowingly and voluntarily waived his right to counsel and instructed the government to provide his appointed attorney with all relevant

No. 25-1540, *United States v. Sychantha*

documents as standby counsel. The court concluded the hearing by reminding Sychantha that, if he hired a new lawyer rather than represent himself, the lawyer would have to be ready for trial by October 10.

Sychantha does not deny that these questions and answers "substantially" complied with the traditional set of inquiries that judges make, *United States v. Bankston*, 820 F.3d 215, 225 (6th Cir. 2016), to ensure that a party waives his right to counsel with "eyes open," *Faretta*, 422 U.S. at 835 (quotation omitted); *see United States v. Sealy*, No. 23-3895, 2025 WL 869511, at *3 (6th Cir. Mar. 20, 2025). Neither his opening brief nor his reply contests the court's process for assessing his waiver.

Sychantha instead claims that he involuntarily waived his right to counsel because he did not understand the district court, noting that he is "from Laos," speaks "with an accent," and "did not have absolute command of the English language." Appellant's Br. 21. But Sychantha does not provide evidence that he ever requested an interpreter or expressed difficulty communicating with the court or his counsel. In fact, his family moved to Canada when he was young, allowing him to attend high school in English-speaking Canadian schools. After that, his criminal history in Canada spans nearly 20 years, much of which he conducted in English with his co-conspirators. On this record, the district court was allowed to take Sychantha at his word when he said he understood the court's questions at the hearing.

Sychantha suggests (though he never develops the point) that he never said he wanted to represent himself. That is difficult to take seriously on this record. The court walked Sychantha through his options. When he chose not to hire another lawyer, when he chose not to use standby counsel as his counsel, and when he answered all of the court's questions during the *Faretta* inquiry the way he did, he plainly chose to represent himself. *See Pittman*, 816 F.3d at 426.

No. 25-1540, *United States v. Sychantha*

Sychantha argues that the court should have taken into account his previous erratic behavior. But it was precisely that behavior that led the district court to conduct a competency evaluation. After that assessment, the court found Sychantha competent to stand trial, which includes competency to waive his right to a court-appointed attorney. *Godinez v. Moran*, 509 U.S. 389, 399–402 (1993); *see also Indiana v. Edwards*, 554 U.S. 164, 173 (2008).

*Sixth Amendment—request for new counsel.* Sychantha separately argues that the court erred by denying his subsequent motions for new appointed counsel. We review the decision not to appoint a third counsel for abuse of discretion. *United States v. Steele*, 919 F.3d 965, 973 (6th Cir. 2019). In gauging this decision, we look to "the timeliness of the motion," "the adequacy of the court's inquiry," "the extent of the conflict," and "the public's interest." *Id*. (quotation omitted).

All four factors confirm that the court did not abuse its discretion. Sychantha moved for new counsel—what would have been his third lawyer—on the first day of trial. Granting this motion would have required significant delay with little promise that his new counsel would fare any better, in Sychantha's eyes, than the prior two lawyers, all with considerable additional cost to the public. *See United States v. Trujillo*, 376 F.3d 593, 606–07 (6th Cir. 2004); *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999). Sychantha still had his second appointed attorney on standby, and the court by then had repeatedly warned him that his second appointed attorney would be his last. Sychantha to this day still has not provided "good cause" for new counsel. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) (quotation omitted). His only effort along these lines turns on meritless challenges to the Canadian extradition process. No abuse of discretion occurred when the court denied Sychantha's day-of-trial request for a third lawyer.

No. 25-1540, *United States v. Sychantha*

Sychantha maintains that the court should have considered that he could not review his notes between days of trial and therefore could not represent himself. But Sychantha did have the ability to review his files outside of court and he still had standby counsel available to help him anyway.

*Sixth Amendment—speedy trial.* Sychantha argues that the government violated his Sixth Amendment right to a speedy trial. Several considerations inform the resolution of speedy-trial claims: "(1) whether the delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as the delay's result." *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001) (quotation omitted).

The length of the delay favors Sychantha. But the other factors strongly cut against him.

Begin with blame for the delay. It was not the government's fault that Sychantha was on the run for several years. Even after law enforcement tracked him down, Sychantha slowed the journey to trial. He contested his extradition to the United States, resulting in months of delay. Once in the United States, he refused to discuss anything with his lawyers other than his extradition process, stalling their work and requiring a delay for a mental health evaluation. Then he made serial requests for new counsel, resulting in one continuance after another. *See United States v. Allen*, 86 F.4th 295, 305 (6th Cir. 2023) (per curiam) (weighing defendant's pretrial delays in government's favor). Sychantha has every right to raise these challenges. But he cannot leverage them to create a speedy-trial claim. This factor cuts firmly against Sychantha.

Move to timeliness. Sychantha did not raise his right to a speedy trial until five days after his trial had begun. Because he "never actively sought trial" by asserting it beforehand, this factor cuts firmly against him. *United States v. Young*, 657 F.3d 408, 417 (6th Cir. 2011).

10

No. 25-1540, *United States v. Sychantha*

End with prejudice. Sychantha argues only that some of the witnesses at trial could not remember certain details about the relevant events. But both Sychantha *and* the government may "suffer equal prejudice due to the unavailability of witnesses." *Id*. at 418 (quotation omitted). And he does not describe "with specificity" how witnesses' lack of memory at trial prejudiced his actual defense. *See id*. (emphasis omitted); *Doggett v. United States*, 505 U.S. 647, 656 (1992). This factor does not support his request either. All in all, the relevant inquiries—in particular, Sychantha's blame for much of the delay—defeat this speedy-trial claim.

*Sentencing.* Sychantha challenges the district court's factual findings at sentencing. We review these findings for clear error. *United States v. Johnson*, 79 F.4th 684, 705 (6th Cir. 2023).

*First*, the district court found that Sychantha had a base offense level of 36 based on a drug-quantity determination of 31,588 kilograms. The district court found this weight by "a preponderance of the evidence" produced at the sentencing hearing. R.216 at 7–9; *see United States v. Gardner*, 32 F.4th 504, 524 (6th Cir. 2022). Contrary to Sychantha's claim, the district court did not have to rely on a jury's finding of fact to make this sentencing determination in calculating an advisory sentence under the Guidelines. *See United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). Because Sychantha does not deny that a preponderance of the evidence supported this finding, we have no basis for disturbing it.

*Second*, a similar conclusion applies to the district court's finding that Sychantha distributed N-Benzylpiperazine (BZP), Methylenedioxymethamphetamine (MDMA), and methamphetamine. At trial, the government presented ample evidence that the recovered drugs contained BZP, MDMA, and methamphetamine. That gave the district court sufficient evidence to make this finding as well. No clear error occurred.

No. 25-1540, *United States v. Sychantha*

*Third*, Sychantha challenges the court's decision to increase his offense level on the ground that he was a leader, organizer, or manager of the drug-trafficking ring. U.S.S.G. § 3B1.1. Multiple witnesses at trial testified that they looked to Sychantha for direction on where to pick up or distribute drugs. One witness referred to him as "the guy that I worked for" in "bringing [] drugs from Canada to the U.S." R.158 at 33. All that Sychantha says in response is that "everyone else in the case played an equal role," and he points to various co-conspirators who introduced recruits to him. Appellant's Br. 35. But he fails to explain how these introductions support his argument that everyone "played an equal role," fails to provide other record support for this claim, and fails to rebut the contrary evidence at trial. Sychantha has, therefore, failed to show that the court clearly erred in finding that he played a leadership role.

We affirm.